## MEAD JOHNSON & CO. v. HILLMAN'S, Inc.

### Civil Action No. 3096.

District Court, N. D. Illinois, E. D.

Sept. 4, 1942.

Chritton, Wiles, Davies & Hirschl, of Chicago, Ill., for plaintiff.

West & Eckhart, of Chicago, Ill., for defendant.

BARNES, District Judge.

In this case are involved questions of the alleged infringement and validity of Claims 5 and 6 of Johnson et al. Patent No. 1,990,329, issued February 5, 1935, on an application filed May 8, 1933.

The plaintiff, Mead Johnson & Company, the owner of the patent, makes a product under the patent which it sells under the name of "Pablum." The defendant, Hillman's, Inc., is a retail store in the city of Chicago and the infringement is said to reside in the sale by the store of "Gerber's Cereal Food" and "Gerber's Strained Oatmeal," manufactured by Gerber Products Company of Fremont, Michigan.

The patent states:

"This invention relates to a food product and method of preparing the same, and more particularly to a dry, pre-cooked cereal adapted to be mixed with a fluid, such as milk or water, of any temperature, whereby the product is instantly converted into mushy (porridge) condition and rendered ready for consumption.

"The object of the invention is to produce a cereal food in substantially dry condition, which has good keeping qualities and which has such quick absorptive powers that when stirred into a liquid of any temperature it immediately presents the appearance and has the characteristics of a cereal which has been thoroughly cooked in a double boiler.

"The product of our invention is characterized by a non-lumpy, mushy, thoroughly cooked appearance it presents as soon as it is mixed with fluid. When prepared by our preferred method, it is further characterized by its initial dry, flaked, shiny appearance.

"The product is palatable and suitable for consumption by adults, children and infants.

"It has a well cooked taste which is superior to and readily distinguishable from the taste of the partially cooked and

toasted or roasted cereal foods on the market sometimes referred to by the trade as 'cold cereals,' which also differ from the product of the invention by reason of their inability to instantly absorb moisture.

\* \* \* \* \* \*

"The treatment herein described results in marked dextrinization of the starch content of the grains used in our product, and abnormal distortion of the size and shape of the starch granules, great increase in size as compared to the normal granules. An analysis of the product shows few or none of the typical or characteristic starch granules of corn, oats or wheat and few or none of the typical clumps of starch granules of said cereals. The dry flakes have a very porous structure throughout that facilitates an extremely rapid and complete absorption of fluid of any temperature, the absorption extending to the interior of the flakes, resulting in an immediate softening and expansion of the entire flake. The flakes lose their sharp outlines and tend to run together in an amorphous mass.

\* \* \* \* \* \*

"As heretofore stated our product has the property of instantly absorbing moisture when mixed with fluid of any temperature. The moisture instantly and completely penetrates the flakes or particles. This results in total disintegration of the flakes or particles which constitute the finished product. The disintegration which we are able to obtain is believed to be due to the absence of typical starch granules and the absence of typical clumps of starch granules, to the fact that the original cellular structure of the cereals subjected to our process is substantially destroyed, and that the structure of the finished product is porous throughout and fragile or friable. The pores extend from the surfaces into the interiors of the flakes or particles, which causes the interiors to be wetted as quickly and thoroughly as their exteriors. The result is that a true mush or porridge, i. e., a stable suspension in which the solid matter does not settle out on standing, which is non-mucilaginous and which is free from mealy, granular, flaky and lumpy particles, is obtained by adding fluid of any temperature."

The claims in suit are as follows:

"5. A dry, pre-cooked cereal product suitable for infant feding consisting of particles having porous construction throughout, and extremely quick fluid absorptive properties being quickly convertible by the addition of fluid of any temperature into a stable suspension, and having the taste, appearance and physical characteristics of a readily digestible cooked cereal, said product being further characterized by dextrinization and abnormal distortion of the starch granules, by practically complete absence of clumps of starch granules, and by practically complete absence of typical or characteristic starch granules of the grain used in the product.

"6. A dry, pre-cooked cereal product consisting of particles having porous construction throughout, the walls defining the pores being thin and fragile, and having extremely quick fluid absorptive properties, being quickly convertible by the addition of fluid of any temperature into a mush or porridge free from lumps, and having the taste, appearance and physical characteristics of a readily digestible cooked cereal, said product being further characterized by dextrinization and abnormal distortion of the starch granules, by total disintegration after being wetted, by practically complete absence of clumps of starch granules, and by practically complete absence of typical or characteristic starch granules of the grains used in the product."

The defendant contends that defendant's products·are not of "porous construction throughout," and that therefore they do not infringe either of the claims in suit. The court is of the opinion that this contention is not well taken and that defendant's products do infringe.

The defendant further contends that defendant's products are embodiments, not of the patented product, but of the prior art— particularly of products manufactured under Braunbeck British Patent No. 9528 of 1906. The court is of the opinion that defendant's products are embodiments both of products manufactured under the patent in suit and of products manufactured under Braunbeck.

The defendant also contends that prior art and the history of the Johnson application impose upon the product claims a limitation that the products be manufactured by the process defined in the process claims; that the defendant's products are manufactured by a different process, and that they do not infringe. It is true that the defendant's products are manufactured by a different process but the court is of the opinion that it cannot be said of this patent that the product claims are limited to products manufactured by the process defined in the process claims.

On the question of validity, the defendant makes a number of contentions as follows: (a) The claims in suit are anticipated by Anderson United States Patent No. 766,212 (August 2, 1904), and the commercial product, "Puffed Wheat," manufactured under that patent; (b) the claims in suit are anticipated by Braunbeck United States Patent No. 1,011,730 (December 12, 1911), and if the expression "porous construction throughout" is given a broad enough interpretation to include the defendant's products, then the Braunbeck British Patent No. 9,528 of 1906 anticipates the claims; (c) disregarding the Anderson and Braunbeck Patents, the patent in suit does not disclose invention over the general knowledge of the art; (d) the disclosure of the patent is insufficient to teach the manufacture of the product; (e) the claims in suit are vague, indefinite, and functional in character; and (f) the claims are based upon material added to the specification after the original filing and not supported by the required oath of the applicants.

The court deems is unnecessary to consider any of these contentions other than those lettered (b) and (c), above.

The Braunbeck United States Patent No. 1,011,730, issued December 12, 1911, and the Braunbeck British Patent No. 9,528 of 1906 cover a process of disintegrating grains. They provide for the pre-cooking of the grains and the passing of the cooked material through drier rolls. The principal distinction between the two Braunbeck patents is that in the United States patent it is stated that the material scraped off the rolls is "in the form of extremely fine flakes" while in the British Patent it is stated that the material is scraped off of the rolls "in the form of an extremely fine skin of even thickness throughout." The process described in the Braunbeck patents is substantially the same as the process set forth in the Johnson patent, and the Braunbeck product, therefore, is necessarily the same as plaintiff's product. In both of the Braunbeck patents, the grain is subjected to a thorough cooking. The cooking is of the extent specified in the Johnson patent. The pulp formed by this cooking operation is then fed between the rolls of a double drum drier which are "arranged very close together" and which are "heated to 100 to 200° C." (212° F. to 392° F.) Both of the Braunbeck patents specify that the material is on the rolls only "a fraction of a minute." While the Braunbeck patents refer to grinding the product from the rolls to form a flour and the patent in suit does not call for grinding after drying, the products from the rolls of the British and United States Braunbeck patents, both before and after grinding, are, in the court's opinion, identical in all patentability significant respects to the defendant's and plaintiff's products, respectively, and both Braunbeck patents accordingly anticipate.

Furthermore, disregarding the Braunbeck patents, the court is of the opinion that the patent in suit does not disclose invention over the general knowledge of the art. The manufacturers of Zwieback and Holland Rusk recommend that their products may be crumbled or ground and mixed with milk or water to form a gruel or mush for infant feeding. Professor Anton J. Carlson, of the University of Chicago, testified that these two products are a fit infant's food and would be readily digestible by the normal infant. Defendant's Exhibit 30 describes a thoroughly precooked and dried cereal product, and reads as follows:

"No. 1. Wheatena, manufactured by Health Food Co., N. Y. 'Made from white wheat, the bran coats are removed and by a peculiar process the starch is converted into a soluble substance. Can be perfectly prepared for the stomach by simply adding

it to boiling water or to cold or hot milk without any cooking whatever. Rich in phosphatic elements, abundant in nitrogen, deficient in starch.' "

█ The court does not believe that either Claim 5 or 6 defines invention over the prior art.

The court's conclusion is that Claims 5 and 6 are invalid.

Counsel for the defendant may, within 7 days from this date, prepare and present, in writing, drafts of findings of fact, conclusions of law, and a decree, giving effect to the views hereinabove expressed. Counsel for the plaintiff may, within 14 days from this date, prepare and present, in writing, such observations in respect of or objections to the drafts presented by counsel for the defendant as to them seem necessary or desirable, and counsel for the defendant may, within 17 days from this date, prepare and present, in writing, such reply as to them seems necessary or desirable. This having been done, the making of findings of fact, conclusions of law and a decree will be taken without further argument.